[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 22, 2006
THOMAS K. KAHN
CLERK

No. 06-13812
Non-Argument Calendar
_____

Agency Nos. A98-395-412 &
A98-395-413

AURA EMILSE ZAPATA-PORRAS,
ISABEL CRISTINA OLAYA-ZAPATA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 22, 2006)

Before TJOFLAT, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Petitioners Aura Emilse Zapata-Porras ("Zapata") and her daughter, Isabel

Cristina Zapata, natives and citizens of Colombia, S.A., arrived in the United States on June 16, 2002, and August 10, 2002, respectively, and were admitted as non-immigrant visitors for pleasure, with authorization to remain for a period not to exceed February 9, 2003. They did not leave within that period, and on June 24, 2002, Zapata, on behalf of herself and her daughter, filed an application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158, 1231, and relief under the Convention Against Torture ("CAT"), 8 C.F.R. § 208.16).

In the asylum application, Zapata asserted that she was persecuted by the Revolutionary Armed Forces of Colombia (FARC) on account of her political opinion. She represented that she was a member of the Community Mother of the Welfare Association in Bello, Colombia, and had to leave the association because she received death threats from the FARC. When she refused to collaborate with the FARC, the FARC, on June 1, 2002, declared her a military target and a political enemy. During her last two months in Colombia, in the City of Medellin, the FARC threatened her daily via the telephone; to escape the threats, she came to the United States. She did not file her asylum application within one year after arriving because she planned to return to Colombia. But, when the FARC

continued to ask about her[1] and conditions in Colombia worsened, she decided to seek asylum.

Petitioners were placed in removal proceedings, and on January 12, 2005, and Immigration Judge (IJ) held an evidentiary hearing on their application for asylum, withholding of removal and CAT relief. The IJ denied the application in full. Petitioners appealed the ruling to the Board of Immigration Appeals (BIA), challenging the denial of asylum and withholding of removal. On June 12, 2006, the BIA adopted the IJ's decision and affirmed. On July 11, 2006, they petitioned this court for review.

I.

The Government contends that we lack jurisdiction to review the IJ's finding that the Petitioners failed to satisfy an exception to the one-year filing requirement for asylum applications. The Petitioners do not address this issue in their brief; rather, they focus on the merits of the asylum claim.

An asylum application must be "filed within one year after the date of the alien's arrival in the United States." INA § 208(a)(2)(B); 8 U.S.C. § 1158(a)(2)(B). An untimely application "may be considered . . . if the alien demonstrates . . . either the existence of changed circumstances which materially

---

[1] Zapata rented her Colombian residence before she left for the United States, and after she left Colombia, the person occupying the house began to receive phone calls once or twice a day asking for her.

affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application. . . ." INA § 208(a)(2)(D); 8 U.S.C. § 1158(a)(2)(D). No court has jurisdiction to review the IJ's determination that the alien failed to demonstrate changed circumstances or extraordinary circumstances that would excuse the untimely filing of her asylum application. See INA § 208(a)(3); 8 U.S.C. § 1158(a)(3) (providing that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)"); see also Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (noting that 8 U.S.C. § 1158(a)(3) "divests our Court of jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse [her] untimely filing"). This jurisdictional bar applies even after the enactment of the Real ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 231. See Chacon-Botero v. U.S. Attorney Gen., 427 F.3d 954, 957 (11th Cir. 2005) (holding that "we cannot review the IJ's and BIA's denial of Chacon-Botero's asylum claim, even considering the changes in the Real ID Act" because "[t]he timeliness of an asylum application is not a constitutional claim or question of law covered by the Real ID Act's changes").

Petitioners concede that they failed to seek asylum within one year after arrival in the United States, and the IJ, and thus the BIA, found that they failed to satisfy an exception to the one-year filing requirement. We therefore lack

4

jurisdiction to review that finding, and the petition is dismissed to the extent that it seeks review of the denial of Petitioners' asylum application. We turn, then, to whether Petitioners should have been afforded withholding of removal or CAT relief.

## II.

When the BIA issues a decision, we review only that decision, "except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the Board adopts the IJ's reasoning, we review the IJ's decision as well." Id. The BIA did so in this case; hence, we review the IJ's decision.

To the extent that the IJ's decision was based on a legal determination, our review is de novo. D-Muhumed v. U.S. Attorney Gen., 388 F.3d 814, 817 (11th Cir. 2004). The IJ's factual determinations are reviewed under the substantial evidence test, and we should "affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. United States Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (internal quotations and citations omitted). The fact that evidence in the record may also support a conclusion contrary to the IJ's findings is not enough to justify a reversal. Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006).

An alien is entitled to withholding of removal under the INA if she can show

5

that her life or freedom would be threatened on account of her race, religion, nationality, membership in a particular social group, or political opinion. Mendoza, 327 F.3d at 1287; see also INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). "An alien bears the burden of demonstrating that [she] more-likely-than-not would be persecuted or tortured upon [her] return to the country in question." Mendoza, 327 F.3d at 1287.

If the alien demonstrates past persecution, it is presumed that her life or freedom would be threatened in the future unless the government can rebut the presumption. 8 C.F.R. § 208.16(b)(1)(I). If, however, the alien does not establish past persecution, she bears the burden of showing that it is more likely than not that (1) she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion; and (2) she could not avoid a future threat to her life or freedom by relocating to another part of her country, if under all the circumstances it would be reasonable to expect relocation. See 8 C.F.R. § 208.16(b)(2); see also Mendoza, 327 F.3d at 1287 (finding that "[a]n alien who has not shown past persecution, though, may still be entitled to withholding of removal if [she] can demonstrate a future threat to [her] life or freedom on a protected ground in [her] country").

In discussing an alien's alleged persecution by the FARC on account of political opinion, we have held:

6

> To qualify for withholding of removal based on persecution by a guerilla group on account of a political opinion, [a petitioner] must establish that the guerillas persecuted her or will seek to persecute her in the future <u>because of</u> her actual or imputed political opinion. It is not enough to show that she was or will be persecuted or tortured due to her refusal to cooperate with the guerillas.

<u>Sanchez v. U.S. Attorney Gen.</u>, 392 F.3d 434, 438 (11th Cir. 2004) (citations omitted). To establish the necessary causal connection between the political opinion and the feared persecution, the alien must present "specific, detailed facts showing a good reason to fear that . . . she will be <u>singled out</u> for persecution on account of such an opinion." <u>Al Najjar</u>, 257 F.3d at 1287 (quotations omitted).

Although the INA does not expressly define "persecution," we recognize that "'persecution' is an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does not amount to persecution.'" <u>Sepulveda v. U.S. Atty. Gen.</u>, 401 F.3d 1226, 1231 (11th Cir. 2005) (citation omitted). In <u>Sepulveda</u>, we held that menacing telephone calls and threats to the alien, her family members, and colleagues did not rise to the level of past persecution. <u>Id.</u>

In this case, we find that substantial evidence supports the IJ's determination that Petitioners were not entitled to withholding of removal under the INA because they had not shown that Zapata had suffered past persecution or that it was more likely than not that Zapata would be subject to future persecution on account of one

7

of the five statutorily protected grounds.

First, substantial evidence supports the IJ's finding that Zapata did not experience past persecution because (1) she testified that she was never physically harmed by the FARC; (2) there was no evidence that her husband and daughters were ever harmed; (3) although the store where her daughter worked was robbed, Petitioners could point to no evidence connecting the robbery to the FARC; and (4) the threatening phone calls do not compel the finding (contrary to the IJ's finding) that Zapata experienced past persecution.

Second, substantial evidence supports the IJ's BIA's finding that Petitioners failed to meet their burden of proving that it was more likely than not that they – specifically, Zapata, would be persecuted in Colombia because (1) Zapata's husband and seven siblings continue to reside in Medellin and have not been harmed; (2) Zapata testified that, after she traveled to the United States for the first time in 1997, she returned to Colombia several times; and (3) although Zapata and her family moved several times, they always remained within the Medellin metropolitan area, and, therefore, did not attempt to relocate within the country.

Finally, substantial evidence supports the IJ's conclusion that Zapata failed to establish a nexus between the feared harm and a protected ground. The evidence is consistent with a finding that the FARC harassed Zapata due to her refusal to cooperate with them, rather than any actual or imputed political opinion. Although

8

the evidence may permit a finding that the FARC was partially motivated by Zapata's imputed  political opinion, it does not compel such a finding. Accordingly, we deny the petition as to this issue because the evidence does not compel reversal.

III.

In their brief, Petitioners state in one line that the IJ erred by denying their application for CAT relief, but they do not address this issue in any other part of their brief.  We therefore consider the CAT issue abandoned.

PETITION DISMISSED, in part; DENIED, in part.

.